UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANGELA S.,

               Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

Case No. 2:18-cv-01072-TLF

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of Defendant's denial of her applications for disability insurance and supplemental security income benefits.

The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court affirms Defendant's decision to deny benefits.

## I.    ISSUES FOR REVEW

1. Did the ALJ err in finding Plaintiff's mental impairments non-severe?
2. Did the ALJ err in evaluating Plaintiff's fibromyalgia?
3. Did the ALJ err in evaluating Plaintiff's symptom testimony?
4. Did the ALJ properly evaluate the medical opinion evidence?
5. Did the ALJ err in discounting lay witness testimony?

## II. BACKGROUND

On October 8, 2014, Plaintiff filed applications for disability insurance and supplemental security income benefits, alleging a disability onset date of February 1, 2010. AR 17, 309-10, 311-16.[1] Plaintiff's applications were denied upon initial administrative review and on reconsideration. AR 17, 198-203, 204-12, 214-18, 219-25. A hearing was held before Administrative Law Judge ("ALJ") Rebecca L. Jones on November 22, 2016. AR 42-101. In a decision dated June 1, 2017, the ALJ found that Plaintiff was not disabled. AR 14-30. The Social Security Appeals Council denied Plaintiff's request for review on May 16, 2018. AR 1-6.

On July 30, 2018, Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision. Dkt. 5. Plaintiff asks this Court to reverse the ALJ's decision and to remand this case for an award of benefits or additional proceedings. Dkt. 14, pp. 17-18.

## III. STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S.Ct. 1148, 1154 (2019). This requires "more than a mere scintilla" of evidence. *Id.*

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the

---

[1] Plaintiff concedes that a prior application was administratively final as of September 23, 2013, and that the period at issue here began on September 24, 2013. AR 17, 50.

decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

IV.     DISCUSSION

The Commissioner uses a five-step sequential evaluation process to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The ALJ assesses the claimant's RFC to determine, at step four, whether the plaintiff can perform past relevant work, and if necessary, at step five to determine whether the plaintiff can adjust to other work. *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). The ALJ has the burden of proof at step five to show that a significant number of jobs that the claimant can perform exist in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

In this case, the ALJ found that Plaintiff had the following severe, medically determinable impairments: chronic obstructive pulmonary disease ("COPD"); fibromyalgia; moderate osteoarthritis of the left knee; and tobacco use disorder. AR 20. The ALJ also found that Plaintiff had a range of non-severe physical and mental impairments, including depression and anxiety. AR 20-22.

Based on the limitations stemming from these impairments, the ALJ assessed Plaintiff as being able to perform a reduced range of light work. AR 23. Relying on vocational expert ("VE") testimony, the ALJ found that Plaintiff could perform her past work; therefore, the ALJ determined at step 4 that Plaintiff was not disabled. AR 29.

A.  Step two

Plaintiff maintains that the ALJ erred at step two of the sequential evaluation by finding her depression and anxiety to be non-severe impairments and failing to include any work-related mental limitations in her residual functional capacity. Dkt. 14, pp. 2-3. In support of her contention, Plaintiff cites treatment notes establishing that Plaintiff was diagnosed with

depression and anxiety and describing the symptoms stemming from these conditions. Dkt. 21, pp. 2-3.

At step two of the sequential evaluation, the ALJ must determine if the claimant suffers from any medically determinable impairments that are "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is not considered to be "severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); Social Security Ruling (SSR) 96-3p, 1996 WL 374181, at *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522(b), 416.920(c); SSR 85-28, 1985 WL 56856, at *3. An impairment is not severe if the evidence establishes only a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL 56856, at *3; *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

Here, the ALJ found that Plaintiff's depression and anxiety did not cause more than minimal limitation in Plaintiff's ability to perform basic work-related mental activities and were therefore non-severe. AR 21. The ALJ cited generally unremarkable mental status examinations and Plaintiff's reported improvement in her symptoms with medication to support this conclusion. *Id.*

Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citing *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 601 (9th Cir. 1999))). Here, the ALJ's finding that Plaintiff's mental impairments were non-severe is a rational interpretation of the record and supported by substantial evidence, specifically the

improvement of Plaintiff's symptoms with medication and generally normal mental status examinations.

The Court also notes that even if the ALJ erred in excluding mental limitations from Plaintiff's RFC, this would constitute harmless error. Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if it is neither prejudicial to the claimant nor "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115.

During the hearing, the ALJ asked the vocational expert about the impact of adding mental restrictions to the existing RFC, including a restriction to performing simple routine tasks (defined as no greater than reasoning level two), having no contact with the general public, and only occasional contact with co-workers. AR 91-93. The vocational expert testified that while these restrictions would prevent Plaintiff from performing her past relevant work, Plaintiff could perform a range of other light, unskilled jobs at step five of the sequential evaluation. *Id.*

Given Plaintiff's age, education, work history, lack of transferable skills and restriction to light work, she would have been found not disabled at step five – due to the application of Grid Rule 202.14. AR 94, 124, 342. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.14.

    B.  <u>The ALJ did not err in evaluating Plaintiff's fibromyalgia</u>

Plaintiff alleges that in evaluating her fibromyalgia, the ALJ failed to properly apply the legal standards set forth in Social Security Ruling ("SSR") 12-2p and *Revels v. Berryhill*, 874 F.3d 648 (9th Cir. 2017). Dkt. 14, p. 3.

In evaluating whether a claimant is disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods, as described in SSR 12-2p. *Revels*, 874 F.3d at 662.

SSR 12-2p provides that once an ALJ has found fibromyalgia to be a medically determinable impairment, the ALJ must then evaluate "the intensity and persistence of the person's pain or any other symptoms and determine the extent to which the symptoms limit the person's capacity for work." SSR 12-2p. If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, the ALJ must consider "all of the evidence in the case record" in determining whether Plaintiff's fibromyalgia is disabling. *Id.*

Plaintiff testified that she has "some degree of pain" every day and stated that medication was helpful in treating her condition, but that it did not completely relieve her pain. AR 66. In evaluating Plaintiff's fibromyalgia, the ALJ found that her complaints were "not reasonably consistent" with the medical evidence. AR 24. The ALJ cited Plaintiff's statements that her fibromyalgia symptoms were controlled with Gabapentin, and neurological examinations that were within normal limits. *Id.*

The ALJ did not err; consistent with *Revels v. Berryhill*, 874 F.3d 648 (9th Cir. 2017) and the requirements of SSR 12-2p, the record shows the ALJ found Plaintiff's fibromyalgia to be a medically determinable, severe impairment at step two of the sequential evaluation, and the ALJ considered the medical records and all the evidence in the Administrative Record for the hearing to assess the impact of Plaintiff's fibromyalgia. AR 20, 24.

C. Plaintiff's symptom testimony

Plaintiff maintains that the ALJ erred in evaluating her subjective allegations. Dkt. 14, pp. 10-15.

In weighing a Plaintiff's testimony, an ALJ must use a two-step process. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014). If the first step is satisfied, and provided there is no evidence of malingering, the second step allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ can provide specific findings and clear and convincing reasons for rejecting the claimant's testimony. *Id.*

In discounting Plaintiff's allegations, the ALJ reasoned that: (1) the objective evidence was inconsistent with Plaintiff's complaints, (2) Plaintiff's symptoms improved with conservative treatment, (3) Plaintiff failed to follow through with treatment recommendations, and (4) Plaintiff's activities of daily living were inconsistent with her allegations. AR 24-25.

The Court finds that the second and third reasons are clear and convincing, legally valid, supported by substantial evidence, and therefore the Court declines to review the other reasons given by the ALJ. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (although an ALJ erred on one reason he gave to discount a medical opinion, "this error was harmless because the ALJ gave a reason supported by the record" to discount the opinion).

With respect to the ALJ's second reason, the effectiveness of medication and treatment are relevant to the evaluation of a claimant's alleged symptoms. 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). Evidence of medical treatment successfully relieving symptoms can

undermine a claim of disability. *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (citing *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir.2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment").

Here, the ALJ has cited treatment notes and Plaintiff's own statements indicating that Plaintiff's fibromyalgia was successfully managed with Gabapentin. AR 24. The ALJ also found that Plaintiff's mental health symptoms were successfully treated with medication. AR 21, 25.

As for the ALJ's third reason, SSR 16-3p provides that if an individual fails to follow prescribed treatment that might improve symptoms, an ALJ may find that the alleged intensity of an individual's symptoms is inconsistent with the record. However, an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *See also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[A]n unexplained, or inadequately explained, failure to . . . follow a prescribed course of treatment . . . can cast doubt on the sincerity of the claimant's pain testimony.").

Here, the ALJ cited Plaintiff's failure to follow up with a rheumatologist as a reason for discounting her allegations concerning her fibromyalgia symptoms. AR 25. In December 2016, Plaintiff's physician referred her for a rheumatology follow up in connection with her fibromyalgia symptoms. AR 778-79. Plaintiff acknowledges that she did not follow up with a rheumatologist, but argues that she consistently pursued medical treatment, and that attending a rheumatology appointment would have been futile since "there is no intensive treatment available for fibromyalgia." Dkt. 14, p. 12.

ORDER AFFIRMING DEFENDANT'S DECISION TO
DENY BENEFITS - 8

Plaintiff's assertion -- that evaluation and treatment by a rheumatologist would not be an effective solution to her condition -- is speculative. Neither Plaintiff, nor this Court, would be able to predict whether any specific treatment regimen would have been prescribed or whether any prescribed treatment would have helped Plaintiff, if Plaintiff had attended her appointment. The Ninth Circuit has noted that there are several more aggressive treatments used for fibromyalgia, including steroid injections and pain medication. *Revels v. Berryhill*, 874 F.3d 648, 658, 667 (9th Cir. 2017).

In evaluating Plaintiff's COPD, the ALJ noted that Plaintiff's physicians repeatedly recommended smoking cessation programs and pointed out Plaintiff's statement that she enjoyed smoking and did not want to quit. AR 25, 535, 564-65, 577-78, 697. As such, Plaintiff has not adequately explained her failure to pursue additional treatment that may have alleviated her fibromyalgia and COPD symptoms.

D. Medical opinion evidence

Plaintiff contends that the ALJ erred in evaluating medical opinion evidence from treating physician Emilia Parrott, D.O., examining physician Jonathan Allison, Psy.D., and non-examining state agency consultants Jeffrey Merrill, M.D., Olegario Ignacio, Jr., M.D., Richard Borton, Ph.D. and Thomas Clifford, Ph.D. Dkt. 14, pp. 8-10. Plaintiff also contends that the ALJ erred in evaluating an opinion from Kimberly Sales, A.R.N.P. and Jeff Smith, M.D. *Id.* at 5-6.

In assessing an acceptable medical source – such as a medical doctor – the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining physician's opinion is contradicted, the opinion can be

rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

1. Treating Physician: Dr. Parrott

On July 7, 2016, Dr. Parrott completed a disability questionnaire. AR 702-06. Dr. Parrott stated that Plaintiff began treatment at her clinic on February 1, 2010. AR 702. Dr. Parrott reported that Plaintiff would be able to sit, stand, and walk for two hours in an eight-hour day and occasionally lift and carry up to 20 pounds. AR 704. Dr. Parrott stated that Plaintiff would have manipulative limitations, and that Plaintiff's symptoms would frequently interfere with her attention and concentration during an eight-hour workday. AR 705. Dr. Parrott opined that Plaintiff would miss work more than three times a month due to her impairments. AR 706.

On October 25, 2016, Dr. Parrott completed a medical source statement concerning Plaintiff's ability to perform work-related physical activities. AR 726-31. Dr. Parrott opined that Plaintiff would be able to lift and carry up to 20 pounds occasionally, could sit, stand, and walk for two hours in an eight-hour day, and would have a range of manipulative, postural, and environmental limitations. *Id.*

The ALJ assigned "partial weight" to Dr. Parrott's opinions. AR 28. The ALJ assigned "great weight" to the lifting and carrying restrictions, reasoning that they were consistent with the record as a whole and Plaintiff's demonstrated functioning. *Id.* The ALJ assigned "little weight" to the remainder of Dr. Parrott's opinions, reasoning that Dr. Parrott's treatment notes reflect that she had only been treating Plaintiff for one to two months at the time of her first assessment, and indicated that the form was filled out with Plaintiff, suggesting that Dr. Parrott relied heavily on Plaintiff's subjective reporting. *Id.*

The ALJ cited Dr. Parrott's statement that her July 7, 2016 opinion was "patient reported", and that for a "more objective" measurement she recommended an independent medical assessment. AR 28, 706. The ALJ also cited Dr. Parrott's July 7, 2016 statement that her opinion was based on Plaintiff's subjective allegations, that there was "minimal objective evidence available" on which to base an assessment and recommending an independent medical evaluation. AR 28, 811. The ALJ found that there was nothing in the record to support the other limitations assessed by Dr. Parrott. AR 28.

An ALJ may reject a physician's opinion "if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)). This situation is distinguishable from one in which the doctor provides her own observations in support of her assessments and opinions. *See Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008). "[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Ryan*, 528 F.3d at 1199-1200).

For the reasons discussed above, the ALJ has properly discounted Plaintiff's subjective allegations. *See supra* Section C. By Dr. Parrott's own admission, she had minimal objective evidence upon which to base her opinion, and her assessment was based heavily on Plaintiff's subjective allegations. AR 706, 811. Dr. Parrott also added a notation at the top of her functional July 2016 assessment indicating that all the limitations contained in her opinion were "per patient report." AR 704. Accordingly, the ALJ has offered a specific, legitimate reason for discounting Dr. Parrott's opinion.

### 2. Examining Physician: Dr. Allison

Plaintiff contends that Dr. Allison's opinion is of limited probative value because he did not state when Plaintiff would be able to return to work and did not account for the interaction between Plaintiff's fibromyalgia symptoms and her mental health symptoms when assessing her limitations. Dkt. 14, p. 9. On March 9, 2015, Dr. Allison conducted a psychological evaluation of Plaintiff. AR 554-58. Dr. Allison's evaluation consisted of a clinical interview and a mental status examination. Based on this evaluation, Dr. Allison opined that Plaintiff had no neurological or memory problems and was well treated for her depression and pain. AR 558. Dr. Allison added that as Plaintiff's depression symptoms improved, so would her concentration and memory. *Id.* Dr. Allison stated that Plaintiff could return to employment "in the future." *Id.*

The ALJ assigned "great weight" to Dr. Allison's opinion, reasoning that it was consistent with the record as a whole and with Plaintiff's demonstrated functioning. AR 27.

An ALJ "may not reject 'significant probative evidence' without explanation*." Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (quoting *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (quoting *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). Here, the ALJ has fully credited Dr. Allison's opinion and need not provide specific, legitimate reasons for doing so. Nevertheless, the ALJ has cited the consistency of Dr. Allison's opinion with the medical record as a reason for assigning it great weight. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

During the evaluation, Dr. Allison talked with Plaintiff about the existence of any limitations caused by her physical impairments and considered the impact of these impairments when rendering his opinion. AR 554, 558. While Dr. Allison's statement that Plaintiff would be

able to return "in the future" is ambiguous, the ALJ is responsible for resolving ambiguities in the record, and the Court cannot say that the ALJ erred in assigning great weight to Dr. Allison's opinion. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

   3. <u>Non-Examining Physicians: Dr. Merrill, Dr. Ignacio, Dr. Borton and Dr. Clifford</u>

  Plaintiff contends that the opinions of Dr. Merrill and Dr. Ignacio are not consistent with the record as a whole, nor are they consistent with Plaintiff's demonstrated functioning. Dkt. 14, p. 9. Plaintiff further contends that the ALJ "does not mention" Dr. Clifford's finding that Plaintiff had moderate limitations in social functioning. *Id.*

  On February 5, 2015, Dr. Merrill opined that Plaintiff would be able to perform light work with no additional limitations. AR 132-34, 147-49. On July 7, 2015, Dr. Ignacio offered an identical assessment. AR 168-69, 184-85.

  On April 8, 2015, Dr. Borton opined that based on a review of the evidence, while Plaintiff would have some difficulty re-acclimating to the social requirements of a workplace, she would adjust adequately over time, and that Plaintiff's consultative examination provided "no evidence for significant limitations" in work-related mental functioning. AR 131, 144-46. Dr. Borton opined that Plaintiff did not have any severe mental impairments and could interact with the general public on an intermittent and superficial basis only. AR 130-31, 135, 150. On July 6, 2015, Dr. Clifford found that Plaintiff did not have any severe mental impairments and affirmed Dr. Borton's opinion that Plaintiff could interact with the general public on an intermittent and superficial basis. AR 166-67, 182-83.

  The ALJ assigned "partial weight" to the opinions of the state agency consultants, reasoning that the opinions of Dr. Merrill and Dr. Ignacio that Plaintiff could perform light work

were consistent with the record and Plaintiff's demonstrated functioning. AR 29. However, the ALJ found that evidence received at the hearing level justified the inclusion of additional postural and environmental limitations in the RFC. *Id.*

The ALJ found that Dr. Borton's and Dr. Clifford's findings that Plaintiff's mental impairments were non-severe was supported by the record, including Plaintiff's limited treatment history and improvement with medication. *Id.* The ALJ assigned "little weight" to Dr. Clifford's finding that Plaintiff had moderate limitations in social functioning, reasoning that this was inconsistent with the record and the opinion of Dr. Allison. *Id.* The ALJ reasoned that Plaintiff's mental health impairments caused no more than mild limitations, which were occasionally aggravated by situational stressors, and that Dr. Allison assessed Plaintiff as having a Global Assessment of Functioning ("GAF") score of between 60 and 65, consistent with no more than mild mental limitations. *Id.*

As to Plaintiff's first argument, Plaintiff does not explain what error the ALJ made in evaluating the opinions of Dr. Merrill and Dr. Ignacio. Plaintiff fails to demonstrate any harmful error on this issue. *See Bailey v. Colvin*, 669 Fed. Appx. 839, 840 (9th Cir. 2016) (citing *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012)) (finding no error where the claimant did not "demonstrate prejudice from any errors"). Plaintiff's second argument is based on a misreading of the record -- the ALJ did discuss Dr. Clifford's opinion concerning Plaintiff's moderate social limitations and provided reasons for discounting it. AR 29.

  4. <u>Dr. Smith and Nurse Practitioner Sales</u>

On August 28, 2014, Nurse Practitioner Sales stated that Plaintiff was under her care for fibromyalgia and depression. AR 572, 696. Ms. Sales stated at this time that Plaintiff had recently moved from Alaska, and that she did not have access to her treatment records. *Id.*

Nevertheless, Ms. Sales opined that Plaintiff's fibromyalgia would prevent her from working "for at least one year." *Id.*

On March 30, 2015, Ms. Sales completed a disability questionnaire, which also shows the signature of Dr. Jeff Smith. AR 605-09. Ms. Sales noted that she had been treating Plaintiff for nine months when she completed the questionnaire. AR 605.

Ms. Sales stated that Plaintiff would be absent from work more than three times a month due to her impairments. AR 609. She also opined that Plaintiff could sit for two hours in an eight-hour day and stand and/or walk for less than one hour. AR 607. Ms. Sales asserted that Plaintiff could lift and carry up to 10 pounds occasionally and would need to get up from a seated position to move around once an hour. *Id.* Ms. Sales opined that Plaintiff would have manipulative limitations, and that her symptoms would occasionally interfere with her attention and concentration. AR 608.

The ALJ assigned "little weight" to Ms. Sales' opinions, reasoning that: (1) the record did not support Ms. Sales' 2014 opinion that Plaintiff would be unable to work for one year, and Ms. Sales did not provide any objective reason for this limitation, (2) the limitations assessed by Ms. Sales were inconsistent with contemporaneous treatment notes and Plaintiff's demonstrated functioning, and (3) Ms. Sales did not provide any explanation for her finding that Plaintiff would miss work three times per month, and "presumably" relied upon Plaintiff's subjective complaints. AR 27.

Under regulations applicable when Plaintiff filed her application, nurse practitioners such as Ms. Sales were not categorized as acceptable medical sources, and the ALJ was permitted to discount an opinion from such a source by providing "reasons germane to each witness for doing so." *Turner v. Commissioner of Social Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (citing *Lewis v.*

*Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *see also* 20 C.F.R. §§ 404.1513(a), 416.913(a). Defendant argues that Ms. Sales is not an acceptable medical source, and that the findings of an "interdisciplinary team" including Dr. Smith would still not constitute an opinion from such a source. Dkt. 18, p. 17.

The Court need not resolve the different standards of review with respect to whether a nurse practitioner is or is not categorized as an "accepted medical source", since the higher standard is met: The ALJ has provided specific and legitimate reasons for discounting Ms. Sales' opinion.

With respect to Ms. Sales' 2014 opinion, the ALJ's finding that Ms. Sales did not provide any objective reasons to support her opinion is supported by Ms. Sales' own statement that she had recently begun treating Plaintiff and did not have access to her treatment records. AR 572, 696; *see* 20 C.F.R. §§ 404.1527(c)(3) 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").

The ALJ has also provided specific, legitimate reasons for discounting Ms. Sales' March 2015 opinion. An ALJ may "permissibly reject[ ] ... check-off reports that [do] not contain any explanation of the bases of their conclusions." *Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012) (internal quotation marks omitted) (quoting *Crane v. Shalala,* 76 F.3d 251, 253 (9th Cir.1996)). But, "opinions in check-box form can be entitled to substantial weight when adequately supported." *Neff v. Colvin*, 639 Fed. Appx. 459 (9th Cir. 2016) (internal quotation marks omitted) (citing *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014)).

| | |
|---|---|
| 1 | Ms. Sales' opinion is contained in a check-box form and provides no explanation for why |
| 2 | Plaintiff would miss work three times a month. Ms. Sales' opinion expresses uncertainty about |
| 3 | when Plaintiff's limitations began, Ms. Sales states that her understanding of Plaintiff's |
| 4 | symptoms is "per patient report" and that she had only been seeing Plaintiff for nine months |
| 5 | when she rendered her opinion. *Id.* As such, the Court cannot say that the ALJ erred in finding |
| 6 | that Ms. Sales' relied heavily on Plaintiff's subjective reports and did not adequately explain her |
| 7 | findings. |

### E. The ALJ did not err in evaluating lay witness testimony

Plaintiff maintains that the ALJ erred in evaluating a lay witness statement from Plaintiff's daughter. Dkt. 14, pp. 15-17.

The ALJ gave "partial weight" to this statement, reasoning that the activities described by Plaintiff's daughter were consistent with the record which reveals that Plaintiff remains "mostly functional." AR 26. The ALJ assigned "little weight" to the opinion of Plaintiff's daughter as to Plaintiff's functional limitations, reasoning that these were "mostly subjective" and inconsistent with Plaintiff's limited treatment history and objective findings in the record. *Id.*

The ALJ has provided germane reasons for discounting this testimony. An inconsistency between the medical evidence and the opinion of a non-acceptable medical source can constitute a germane reason for discounting that opinion. *See e.g. Bayliss v. Barnhart,* 427 F.3d, 1211, 1217 (9th Cir. 2005), *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (conflict between lay witness testimony and the medical evidence is a germane reason for rejecting such testimony); *see also Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (stating an ALJ may reject lay witness statements based on claimant's failure to participate in treatment); *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (an ALJ may reject lay witness testimony for

the same reasons she rejected a claimant's subjective complaints if the lay witness statements are "similar to such complaints.").

CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ properly determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is AFFIRMED.

Dated this 13th day of November, 2019.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge